UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X
UNITED STATES OF AMERICA,

                                                             16 Cr. 221 (RWS)

- against -

                                                             OPINION

ILYA KOGAN AND
ASHRAF HASAN-HAFEZ,

             Defendants.
------------------------------------------X

A P P E A R A N C E S:



        <u>Attorney for Plaintiff</u>
        JOON H. KIM
        Acting United States Attorney
        Southern District of New York
        One Saint Andrew's Plaza
        New York, NY 10007
        By:  Catherine Geddes, Esq.
             Jessica Greenwood, Esq.
             Jonathan Cohen, Esq.
             Noah Solowiejczyk, Esq.

        <u>Attorney for Defendant Ilya Kogan</u>
        BARKET MARION EPSTEIN & KEARON, LLP
        666 Old Country Road, Suite 700
        Garden City, New York 11530
        By:  Bruce Barket, Esq.
             Alexander Klein, Esq.

        <u>Attorney for Defendant Ashraf Hasan-Hafez</u>
        THE ZUPPA FIRM PLLC
        1205 Franklin Avenue, Suite 350
        Garden City, New York 11530
        By:  Raymond Zuppa, Esq.

**Sweet, D.J.**

Defendants Ashraf Hasan-Hafez ("Hasan-Hafez") and Ilya Kogan ("Kogan") (collectively, the "Defendants") have jointly moved this Court for an order compelling the Government (the "Government" or the "United States") to provide a bill of particulars, and to compel the Government to produce certain recently discovered *Brady* materials. Additionally, Hasan-Hafez has individually moved, pursuant to Federal Rule of Criminal Procedure 12(b), to dismiss a portion of the superseding indictment (the "Superseding Indictment") as time-barred. For the reasons set forth below, the Defendants' motions are denied.

## I. Facts & Prior Proceedings

The factual background and procedural history of this litigation is detailed in prior Opinions of this Court, familiarity with which is assumed. *See United States v. Hasan-Hafez*, No. 16 Cr. 221 (RWS) (S.D.N.Y. July 20, 2017); *United States v. Hasan-Hafez*, No. S1 16 Cr. 221 (RWS), 2017 WL 4402577, *1 (S.D.N.Y. Oct. 3, 2017).

On December 18, 2015, the Government charged Kogan with conspiracy to commit health care fraud, in violation of 18

2

U.S.C. § 1349, and health care fraud, in violation of 18 U.S.C. §§ 1347, 2. (Compl. ¶¶ 1-4.) On March 29, 2016, in a Superseding Indictment, a Grand Jury charged both Hasan-Hafez and Kogan with the aforementioned crimes. (SI ¶¶ 1-4.)[1] The criminal complaint ("Complaint") and Superseding Indictment allege the following facts, summarized as follows here. The Defendants "[f]rom at least in or about January 2010 through at least in or about August 2013, in the Southern District of New York and elsewhere," committed the crimes of conspiracy to commit health care fraud and health care fraud. (Compl. ¶¶ 1, 3.) Further, they allege that Hasan-Hafez was the owner of a physical therapy practice, Excellent Care Physical Therapy, P.C. ("Excellent Care"), which operated in the vicinity of 1684 East 18th Street, Brooklyn, New York 11229 (the "East 18th Street Clinic" or the "Clinic"), and that he employed individuals who provided physical therapy services to patients at the Clinic. (Compl. ¶ 8.) They further allege that Kogan was the owner of an acupuncture company, Zen Acupuncture ("Zen Acupuncture"), which also operated its practice at the East 18th Street Clinic, and that Kogan performed acupuncture on patients at the Clinic. (Compl. ¶ 8.) The Complaint and Superseding Indictment allege that Kogan and Hasan-Hafez instructed Clinic employees to

---

[1] References to "SI" are to portions of the Superseding Indictment.

3

"falsely represent[] that certain health care services had been provided to patients," (see SI ¶ 1) and "knowingly and willfully did execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain . . . money and property owned by . . . a health care benefit program, namely Medicare and Medicaid," (see SI ¶ 4.)[2]

The Center for Medicare and Medicaid Services ("CMS") received an anonymous letter providing that the East 18th Street

---

[2] More specifically, the Superseding Indictment charges the Defendants with the following as to conspiracy to commit health care fraud:

> From at least in or about January 2010 through at least in or about August 2013, in the Southern District of New York and elsewhere, ASHRAF HASAN-HAFEZ and ILYA KOGAN, the defendants, and their co-conspirators, in order to fraudulently obtain payments from Medicare and Medicaid to which they were not entitled, submitted and caused to be submitted to Medicare and Medicaid numerous claims that falsely represented that certain health care services had been provided to patients.

(SI ¶ 1.) As to the charge of health care fraud, the Superseding Indictment charges that:

> From at least in or about January 2010 through at least in or about August 2013, in the Southern District of New York and elsewhere, ASHRAF HASAN-HAFEZ and ILYA KOGAN, the defendants, knowingly and willfully did execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, a health care benefit program, namely Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items, and services . . . .

(SI ¶ 4.)

4

Clinic was engaging in fraud, specifically by performing services, including acupuncture, not covered by Medicare, and then submitting Medicare reimbursement claims falsely stating that covered services had in fact been provided. (Compl. ¶ 9.) As part of its investigation, the Government debriefed with several cooperating witnesses who had previously worked at the East 18th Street Clinic. (Compl. ¶ 9.) For example, according to Cooperating Witness 1 ("CW-1"), who allegedly reported directly to Kogan from about November 2012 through about March 2013, when, as frequently occurred, a patient arrived at the Clinic without a referral for physical therapy from an outside doctor, the patient was referred to an in-house part-time doctor or physician's assistant who would then write a prescription for physical therapy. (Compl. ¶ 10.) After writing the prescription for the patient, the doctor or physician's assistant would allegedly direct the patient to the acupuncturist or massage therapist. (Compl. ¶ 10.) CW-1 further alleged that the Clinic required patients to see this doctor or physician's assistant about once per month, regardless of need, in order to continue receiving massage and/or acupuncture services from the Clinic. (Compl. ¶ 10.)

Moreover, as relevant here, according to Cooperating Witness 2 ("CW-2"), who is alleged to have worked at the Clinic

5

as the primary physical therapist from about April 2010 through about October 2012, shortly after beginning employment at the Clinic, CW-2 received pressure from Kogan to add information to Superbills and patient notes indicating that physical therapy services had been provided to patients when, in actuality, they had not been. (Compl. ¶ 11.) The Complaint also alleges that as part of the investigation into the charges, the Government interviewed employees at a company that assists health care providers with the process of submitting bills to Medicare as well as Medicare and Medicaid beneficiaries. (Compl. ¶¶ 12, 14.)

The parties engaged in discovery on May 23, 2016, wherein the Government produced approximately 125,000 items, consisting of undercover surveillance video and reports, bank records, Medicare and Medicaid documents, medical charts, and patient records. (See Gov't Opp'n Br. 2; Hasan-Hafez Mot. for Bill of Particulars 6; Kogan Br. 2.) Further, the Government produced a chart on September 14, 2016 showing the results of interviews with thirty patients for whom Medicare or Medicaid had been billed from the East 18th Street Clinic. (See Gov't Opp'n Br. 3.) The chart compared the services for which Medicare or Medicaid were billed with the services the patients reported receiving when they were interviewed. (See Gov't Opp'n Br. 3.) On October 30, 2017, the Government provided the Defendants with

a version of this chart that contained the names of each of the interviewed patients. (*See* Gov't Opp'n Br. 3.)

As relevant to this motion, on March 27, 2017, Hasan-Hafez moved this Court to compel the Government to produce certain documents, including, broadly, the identity and full statements of all potential witnesses, including co-conspirators, cooperating witnesses, and patients; *Brady* material; *Giglio* and Jencks Act material; Rule 404(b) material; and billing records that relate to a particular clinic address. This motion to compel was denied on July 21, 2017, as was Hasan-Hafez's motion for reconsideration, on October 3, 2017.

The Defendants have now jointly moved to compel the Government for a bill of particulars and for certain recently discovered *Brady* materials, and Hasan-Hafez has individually moved to dismiss a portion of the Superseding Indictment as barred by the statute of limitations. The instant motions were filed on November 3, 2017. The motions to compel a bill of particulars and to compel *Brady* material were argued on November 29, 2017, and Hasan-Hafez's motion to dismiss was taken on submission on that same date, at which point all motions were

marked fully submitted. The motion to compel *Brady* material was resolved by the parties and is now moot.[3]

## II. **The Defendants' Motions to Compel a Bill of Particulars Are Denied**

In their motions to compel a bill of particulars, the Defendants request that the Government:

a) Identify the alleged fraudulent claims and set forth the manner in which each is false.

b) For each claim above, identify the documents reflecting the "unnecessary" treatments and the documents reflecting services billed for but not provided, or identify in what other respect the government alleges the documents are false or fraudulent.

(Hasan-Hafez Br. 5-6.) The Defendants argue that they simply would like to know what claims the Government intends to use at trial as the basis for their case, (*see* Hasan-Hafez Br. 12) and

---

[3] As for the motion to compel *Brady* material, the Defendants requested that the Government share with them certain audit documents acquired by CMS's private contractor SafeGuard Services ("SGS"). (*See* Hasan-Hafez Mots. to Dismiss & Compel, 9-10.) This dispute was resolved outside of court, as explained by the Government during oral argument on November 29, 2017:

> Without obviously conceding that any of the materials that they have requested are *Brady* or even that we have obligations to produce them, . . . the government has agreed to go ahead and reach out to SGS and request those materials and produce anything that may exist to the defense.

(*See* Arg. Tr. 12-13, Nov. 29, 2017.)

8

that without a bill of particulars, Defendants will be required to prepare defenses for nearly 100,000 claims provided wholesale by the Government. (See Kogan Br. 6.) Moreover, they argue, this would confer an enormous tactical advantage to the Government. (See Kogan Br. 6.)

In response, the Government argues that the Defendants are not in need of a bill of particulars, they simply want one in order to cabin the Government's proof, tailor their own case to that proof, and force the Government to invest extensive time in the lead-up to trial to prepare the requested information. (See Gov't Br. 8.) Further, during oral argument, the Government provided that its case will not be proven by relying on witness testimony as to each allegedly fraudulent claim. (See Arg. Tr. 6.) Rather, the Government informed the Defendants and the Court that "the proof that the government will be introducing about the fraud scheme here is primarily through employee testimony, not through specific patients . . . ."[4] (See Arg. Tr. 5.)

---

[4] In elaborating further on what the employee testimony they put forward might look like, the Government provided:

> What those witnesses will say is that I was told by the defendants that, for example, if I treated a patient for 15 minutes, I should bill it as if it was 45 minutes; or, for example, if I saw four patients in a day and actually treated them I should nonetheless bill every day 20 patients. These are just examples, but that's the kind of evidence that the government will be putting on. Through that and through their cross-examination they can explain

9

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits." *See* Fed. R. Crim. P. 7(f). The proper scope and function of a bill of particulars is to provide sufficient information about the nature of the charge to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *see also* 1 C. Wright, Federal Practice and Procedure § 129 at 434-35 (2d ed. 1982) ("The function of a bill of particulars is to provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial.").

The decision of "[w]hether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984). "So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial

---

> to the jury why the jury should not credit that testimony, but that's how this extensive fraud will be proven.

(*See* Arg. Tr. 6.)

court has not abused its discretion." *United States v. Maull*, 806 F.2d 1340, 1345-46 (8th Cir. 1986), *cert. denied*, 480 U.S. 907 (1987); *see also United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001) ("A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial."). Importantly, "[t]he Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed." *United States v. Triana-Mateus*, NO. 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002); *see also United States v. Zemlyansky*, 945 F. Supp. 2d 438, 485 (S.D.N.Y. 2013) ("It is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory." (internal citation and alteration omitted)).

Accordingly, the proper inquiry on a motion to compel a bill of particulars is whether the information sought is necessary, not whether it is helpful. *See United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001); *United States v. Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985) ("It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges

11

against him, the government is not required to disclose additional details about its case."). Under the relevant legal standard, the Government is not required to: (a) "particularize all of its evidence," *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991); (b) disclose the precise manner in which the crimes charged in the indictment were committed, *see Torres*, 901 F.2d at 233-34; or (c) provide the defendant with a preview of the Government's case or legal theory, *see United States v. Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996); *see also United States v. Sindone*, 01 Cr. 517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("The stakes in a criminal case are high, and temptations or perjury, subornation and intimidation are ever present. Accordingly, the government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented.").

The Defendants' request for a bill of particulars is denied. The charging instruments and discovery produced provide sufficient information about the nature of the charges to enable the Defendants to prepare for trial and to avoid unfair surprise. The Government has repeatedly stated that it will attempt to show that the Defendants engaged in a large-scale

fraud on Medicaid and Medicare by directing employees to falsify patient records and Superbills. As such, the Government has stated that it will attempt to prove this alleged far-reaching fraud by way of employee-witness testimony as to billing procedures, the number of patients actually treated each day, and the manners in which patients were actually treated.

Because the Complaint and discovery materials provide a clear explanation of the fraudulent schemes with which the Defendants are charged, ordering a bill of particulars is not necessary. *See United States v. Nachamie*, 91 F. Supp. 2d 565, 570 (S.D.N.Y. 2000) (citing *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)) ("Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternative form, no bill of particulars is required."). For example, the Complaint provides the dates of employment and type of services provided by cooperating witnesses (*see* Compl. ¶¶ 10(a), 11(a)); specifies the types of procedure codes that employees were instructed to add to patients' bills (*e.g.*, "KOGAN frequently instructed CW-2 to add procedure codes for manual therapy and physical exercise in particular because these procedure codes provided a higher rate of reimbursement from Medicare and Medicaid than other forms of physical therapy" (Compl. ¶ 11(e))); describes how patients who

13

received only acupuncture were nonetheless billed for physical therapy services (*e.g.*, Compl. ¶ 11(f)); describes how patients who were given prescriptions for physical therapy by the on-site doctor were walked directly to Kogan's acupuncture room (Compl. ¶¶ 10(d), 11(h)); and describes how patients received physical therapy services from an employee who was not licensed to provide such services (Compl. ¶¶ 14(b), (c), (f)). Moreover, the Government explained during oral argument that it plans to prove the allegedly fraudulent scheme "primarily through employee testimony, not through specific patients." (*See* Arg. Tr. 5.) The Government has also made clear that it will not attempt to prove the allegations by demonstrating that specific treatments were falsely or fraudulently billed.[5] (*See* Arg. Tr. 5-6.)

---

[5] Specifically, the Government elaborated the following during oral argument on November 29, 2017:

> This is not a case where we're going to put up one or two witnesses or ten or thirty patient witnesses and point to examples on specific days of treatments that they were billed for and say that wasn't true, on that Monday they actually received this. That is not how this case is going to be proven, and we've said that consistently. . . . [T]he defendant's fraud over a period from January 2010 through August 2013, encompassed so many claims that it's not possible for a witness such as a provider, a physical therapist, for example, who worked for the defendants, they cannot point to a specific witness name and say I didn't provide these services to them, I only provided these other ones.

(Arg. Tr. 5-6.)

14

The Defendants have primarily relied on a recent ruling from the Honorable Lorna G. Schofield in support of their argument, *United States v. Vaid*, No. 16 Cr. 763 (LGS), 2017 WL 3891695, at *1 (S.D.N.Y. Sept. 5, 2017), however it is distinguishable from the present action. In *Vaid*, Judge Schofield ordered the Government to identify all Medicare or Medicaid claims which the Government intended to prove were fraudulent because goods or services were not medically necessary or had not been provided, and to specify which of those two theories applied to each claim. *Id.*, at *11. However, in the current action, unlike in *Vaid*, the Government has shared with the Defendants its general trial strategy. (*See* Arg. Tr. 5-6.) In sum, here, the Government has provided the Defendants with extensive information and insight into how they intend to prove the allegations, making a bill of particulars simply helpful, rather than necessary, to the Defendants. *See Trippe*, 171 F. Supp. 2d at 240 ("The Government, however, need not particularize its evidence unless the requested particularization is necessary to give the defendant enough information about the offense charged so that he may, by the use of diligence, prepare adequately for trial.").

Accordingly, the Defendants' motions to compel a bill of particulars are denied.

## III. **Defendant Hasan-Hafez's Motion to Dismiss is Denied**

Defendant Hasan-Hafez seeks to have portions of the Superseding Indictment dismissed as time-barred. (*See* Hasan-Hafez Mots. to Dismiss & Compel 3.) Specifically, Hasan-Hafez argues that portions of both the conspiracy and substantive healthcare fraud counts must be dismissed to the extent that they allege acts occurring before March 29, 2011.[6] The Government argues that Defendant's challenge fails on procedural grounds for being premature, and on substantive grounds because well-settled law establishes that conspiracies and substantive healthcare fraud are continuing offenses for statute of limitations purposes. (*See* Gov't Opp. Br. 19.)

"When deciding a motion to dismiss an indictment pursuant to Fed. R. Crim. Pro. 12(b), a court must accept all factual allegations in the indictment as true." *United States v. Clarke*, 2006 WL 3615111, at *1 (S.D.N.Y. Dec. 7, 2006) (citing

---

[6] Neither the conspiracy to commit healthcare fraud nor the substantive healthcare fraud statutes expressly list a statute of limitations for each crime. *See* 18 U.S.C. §§ 1347, 1349. However, pursuant to 18 U.S.C. § 3282, for all non-capital federal offenses for which a statute of limitations is not "expressly provided by law," a category which includes healthcare fraud and conspiracy to commit healthcare fraud, the statute of limitations is five years. *See id.; see also id.* § 3282. As such, and given that the Superseding Indictment was filed on March 29, 2016, Hasan-Hafez here argues that all allegations referring to more than five years prior are time-barred.

16

*Costello v. United States*, 350 U.S. 359 (1956) (internal citation omitted)). In the specific context of a motion based on statute of limitations grounds, a pre-trial motion to dismiss is premature if the indictment is facially sufficient and the defendant's argument in favor of dismissal requires a determination of factual issues. *United States v. FNU LNU*, No. 06 CR. 846 (DAB), 2007 WL 1149261, at *2 (S.D.N.Y. Apr. 12, 2007) (citing *United States v. Martinez*, No. S1 94 CR 219 (RPP), 1995 WL 10849, at *2 (S.D.N.Y. Jan. 12, 1995)) (citing *Costello*, 350 U.S. at 359) ("Since the grand jury determined in this Indictment that facts constituting an element of the crime charged occurred within the relevant statute of limitations period, such an argument by Defendants may not be properly considered prior to trial, and their motion to dismiss the Indictment as untimely under the statute of limitations is denied."). Indeed, a defendant's assertion of the statute of limitations is an affirmative defense to be raised at trial. *United States v. Levine*, No. 16 CR. 715 (JSR), 2017 WL 1293621, at *5 (S.D.N.Y. Apr. 7, 2017) ("[T]he Government need not have alleged in the Indictment facts that would defeat an affirmative defense based on the statute of limitations.") (citing *Smith v. United States*, 568 U.S. 106 (2013)); *see also United States v. Sisson*, 399 U.S. 267, 287 (1970) ("It has never been thought

that an indictment, in order to be sufficient, need anticipate affirmative defenses.").

Because conspiracy to commit healthcare fraud and healthcare fraud are continuing offenses, such that any one act committed in the course of a conspiracy within the statute of limitations brings the whole conspiracy into the limitations period, the Defendant's motion to dismiss is denied. *See, e.g., Smith v. United States*, 568 U.S. 106, 111 (2013). As to the conspiracy allegation, "[s]ince conspiracy is a continuing offense," that the Superseding Indictment alleges that the conspiracy continued "through at least in or about August 2013" brings the entire conspiracy charged in Count One into the statute of limitations period. As to substantive healthcare fraud, it, like other scheme offenses, is also a continuing offense. *See United States v. Rutigliano*, 790 F.3d 389, 396 (2d Cir. 2015) (holding that "[a]lthough we have not previously considered the question, we now hold that a scheme to violate the health care fraud statute is a continuing offense.").

Accordingly, Hasan-Hafez's motion to dismiss portions of the Superseding Indictment relating to conduct that allegedly occurred prior to March 29, 2011 is denied.

18

## IV. Conclusion

For the foregoing reasons, the Defendants' motions to compel a bill of particulars are denied, and Defendant Hasan-Hafez's motion to dismiss portions of the Superseding Indictment is denied.

It is so ordered.

**New York, NY**
**December 26, 2017**

_____
ROBERT W. SWEET
U.S.D.J.