UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

UNITED STATES OF AMERICA

        -against-                16 Cr. 221 (RWS)

ASHRAF HASAN-HAFEZ,            SENTENCING
                                 OPINION

                Defendant.

------------------------------------------X

**Sweet, D.J.**


On March 16, 2018, Ashraf Hasan-Hafez
("Defendant" or "Hasan-Hafez") pleaded guilty to one count of
conspiring to commit health care fraud in violation of 18 U.S.C.
§ 1349 and one count of health care fraud in violation of 18
U.S.C. § 1347. Based on the conclusions set forth below, Hasan-
Hafez will be sentenced to 55 months' imprisonment, subject to
the scheduled sentencing hearing on February 12, 2019.


**Prior Proceedings**


Hasan-Hafez was named in a two-count superseding
indictment filed in the Southern District of New York on
February 14, 2018. Count One charges that from at least January

1

2010 through August 2013, Hasan-Hafez and others conspired to commit health care fraud, in violation of 18 U.S.C. § 1347, by executing a scheme to defraud the health care benefit programs Medicare and Medicaid in connection with the delivery of and payment for health care benefits, items, and services. Count Two charges that from at least January 2010 through August 2013, in the Southern District of New York and elsewhere, Hasan-Hafez, in order to fraudulently obtain payments from Medicare and Medicaid to which he was not entitled, submitted numerous false claims and supporting documentation for physical therapy services and related medical items purportedly provided to beneficiaries by qualified persons, but were instead provided by unlicensed, unsupervised or otherwise unqualified persons, or were billed to reflect different or additional services than those that were actually provided.

On March 16, 2018, Kogan appeared before this Court and pleaded guilty to his criminal conduct as charged, pursuant to a written plea agreement.

Hasan-Hafez is scheduled to be sentenced on February 12, 2019.

## The Sentencing Framework

In accordance with the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and the Second Circuit's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

   (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2)   the need for the sentence imposed —

      (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)   to afford adequate deterrence to criminal conduct;

      (C)   to protect the public from further crimes of the defendant; and

      (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   (3)   the kinds of sentences available;

   (4)   the kinds of sentence and the sentencing range established for —

      (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

3

(5)   any pertinent policy statement [issued by the
      Sentencing Commission];

(6)   the need to avoid unwarranted sentence
      disparities among defendants with similar
      records who have been found guilty of similar
      conduct; and

(7)   the need to provide restitution to any victims of
      the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all

the facts appropriate for determining a sentence, whether that

sentence is a so-called Guidelines sentence or not. *See Crosby*,

397 F.3d at 114-15.


**The Defendant**

The Court adopts the facts set forth in the

Presentence Investigation Report ("PSR") with respect to the

Defendant's personal and family history.


**The Offense Conduct**

The Court adopts the facts set forth in the PSR with

respect to the offense conduct. These facts are summarized, in

brief form, below.

The investigation that led to Hasan-Hafez's indictment was conducted by the Federal Bureau of Investigation ("FBI") and the Office of Inspector General of the U.S. Department of Health and Human Services ("HHS-OIG").

Medicare is a federal health care program that provides benefits to persons who are over the age of 65 or disabled. Medicaid is a program funded by both the federal government and the State of New York that provides benefits to individuals and families who meet financial and other eligibility requirements. Individuals can qualify as both Medicare and Medicaid beneficiaries in the event that they met the eligibility requirements for both programs. Medicare and Medicaid are each considered "health care benefit programs," as defined by 18 U.S.C. § 24(b).

One component of Medicare, referred to as "Part B," covers the costs of physicians' services and outpatient care, such as physical therapy, occupational therapy, and diagnostic tests. Medicare covers those costs only if, among other requirements, they are medically necessary and ordered by a physician. Medicaid has similar requirements.

Under the Medicare and Medicaid regulations, a medical provider is permitted to submit reimbursement claims for services actually rendered and is required to maintain patient records verifying the provision of services. By submitting the claim, the provider is certifying that the services were rendered to the patient and were medically necessary. In addition, for a provider to obtain reimbursed for a medical service, including physical therapy, from Medicare and/or Medicaid, the provider must complete a "Superbill." The Superbill contains specific "procedure codes" and "diagnosis codes" that correspond to the services rendered by the provider. A Superbill also contains the number of "billing units" corresponding to each procedure code, *i.e.*, the amount of time the physical therapy provider spent performing different types of physical therapy on a patient. Medicare and Medicaid reimburse different procedure codes at different rates of reimbursement, and the reimbursement amount increases as the number of billing units increases. Medicare and Medicaid regulations also require providers seeking reimbursements to accurately and completely document beneficiaries' medical records, thus creating what are known as "patient notes." The programs may request these patient notes as backup documentation in order to support a particular reimbursement claim or in the event of an audit.

Acupuncture is not considered a medically necessary service, and Medicare reimbursement for acupuncture may therefore not be made. Acupuncture is only reimbursed by Medicaid in New York City in very rare circumstances. Under Medicare and Medicaid, physical therapy may only be administered by individuals that have received the appropriate licenses to provide these services to patients, and claims submitted for physical therapy that were administered by individuals lacking the appropriate license will not be reimbursed.

A Small Business Administration loan application submitted on December 9, 2010 on behalf of Hasan-Hafez and his co-defendant Ilya Kogan ("Kogan") revealed that Hasan-Hafez was the listed owner of a physical therapy practice, Excellent Care Physical Therapy, P.C., which operated at 1684 East 18th Street in Brooklyn. Kogan was the owner of an acupuncture company, Zen Acupuncture, which also operated its practice out of the East 18th Street clinic and shared space with Hasan-Hafez's physical therapy clinic.

In early 2012, the FBI and the HHS-OIG began an investigation involving the East 18th Street clinic after receiving an anonymous letter asserting that the clinic was

7

engaging in fraud by performing services, including acupuncture, which were not covered by Medicare, and then submitting Medicare reimbursement claims falsely stating that covered services had in fact been provided.

Throughout the investigation, case agents learned that Kogan ran the clinic on a day-to-day basis, served as the head acupuncturist at the clinic, and had employees who reported to him. Agents also learned through confidential witnesses that the services provided at the clinic were predominantly massage therapy and acupuncture. The staff at the clinic included a part-time doctor or physician's assistant who provided referrals and who, on occasion, worked on premises. Whenever a patient arrived at the clinic without an order or referral for physical therapy from an outside doctor, the patient was directed to this doctor or physician's assistant, who then wrote a prescription for physical therapy and indicated it as the necessary treatment. The doctor or physician's assistant would then direct the patient to the acupuncturist or physical therapist. The clinic required patients to see this doctor or physician's assistant roughly once each month, regardless of need, in order to continue receiving massage and/or acupuncture services from the clinic.

Shortly after beginning employment at the clinic as a licensed physical therapist, one of the confidential witnesses ("CW-1") was instructed by a member of the clinic's billing department to sign a National Provider Identifier application. CW-1 was informed by Hasan-Hafez that the clinic's practice would not be billed to Medicare and Medicaid under CW-1's individual name, but rather under the clinic's group provider number. However, Medicare and Medicaid billing records reveal that the clinic actually listed CW-1 as the rendering provider for a signification portion of the billing from the clinic. Additionally, CW-1 received pressure from Kogan to add information to Superbills and patient notes indicating that physical therapy services were provided to patients that were, in fact, never provided. Kogan informed CW-1 that the clinic needed to add those additional procedure codes to the Superbills because the clinic was struggling and needed money. Kogan also instructed CW-1 to add additional billing units to the Superbills and corresponding patient notes to reflect that CW-1 had spent more time providing physical therapy to a given patient than had, in actuality, been provided. Kogan further directed CW-1 to complete patient notes and Superbills for patients who solely received acupuncture to instead reflect that the patients had received physical therapy.

9

Around February 2013, the clinic ran an advertisement in a Russian newspaper with circulation in New York City. The advertisement included a photograph of Kogan and identified him as an acupuncturist at the clinic. CW-1 was only referenced in at the end of the advertisement, in a section titled "Also Working Here" that identified CW-1 as a physical therapist. The advertisement also featured comments from two patients regarding the acupuncture that they had received from Kogan. It did not contain any patient commentary regarding physical therapy. The advertisement indicated that the clinic offered transportation for patients in all five boroughs of New York City.

Several patients interviewed as part of the investigation indicated that they had received acupuncture from Kogan at the clinic. However, records revealed that the clinic submitted Medicare reimbursement claims for these patients listing procedure codes for physical therapy rather than acupuncture. Hasan-Hafez, among others, certified that such physical therapy services were provided to these patients. The clinic billed Medicaid and Medicare for these purported physical therapy treatments and received thousands of dollars in reimbursements. In addition, the investigation revealed that some patients had received physical therapy treatment by an employee of the clinic who was not licensed in New York to

10

provide physical therapy. Although treatment by unlicensed physical therapists is not entitled to reimbursement under Medicare or Medicaid, the clinic billed the programs for these physical therapy services and subsequently received reimbursements for such services. Hasan-Hafez certified that such physical therapy services were provided to these patients.

The case agent also interviewed an employee ("Individual-1") of a company ("Consulting Cornpany-1") that assists health care providers with the process of submitting bills to Medicare. According to Individual-1, in approximately 2008 or 2009, Consulting Company-1 and Individual-1 began providing billing services to Kogan for Kogan's acupuncture practice. When Kogan later began operating the East 18th Street clinic, Kogan asked Individual-1 to provide billing services for the clinic as well. According to Individual-1, all of the billing from the clinic was to Medicare and Medicaid, with the exception of one single patient who was billed to private insurance. The clinic billed under the name of Hasan-Hafez's physical therapy company, Excellent Care. Hasan-Hafez generally visited Individual-1 at Consulting Company-1's offices on a monthly basis to make payments for the billing services being provided. Individual-1 also personally visited the East 18th Street clinic to pick up the clinic's Superbills.

11

According to information furnished by the Government, Hasan-Hafez and Kogan are responsible for total intended losses to Medicare and Medicaid amounting between $1,500,000 and $3,500,000. The actual loss was calculated to be $1,297,000. Additionally, Hasan-Hafez and Kogan were both determined to play managerial roles in the offense by virtue of their positions at the clinic and their oversight over employees and the billing procedures. For example, employees who raised with Hasan-Hafez their concerns about the clinic's fraudulent billing were directed to follow Kogan's instructions.

**The Relevant Statutory Provisions**

For the offenses contained in Counts One and Two of the Superseding Indictment, to which Hasan-Hafez pleaded guilty, the maximum term is ten years each. 18 U.S.C. §§ 1347, 1349. The maximum fine is $2,594,000 per count. *Id.* A total special assessment of $100 per count is mandatory. *Id.* § 3013. The Court may impose a term of supervised release of not more than three years per count. *Id.* § 3583(b)(2). The Defendant is eligible for not less than one nor more than five years' probation per count because the offenses are Class C felonies. *Id.* § 3561(c)(1). Restitution shall be ordered in this case pursuant to 18 U.S.C.

12

§ 3663A. Restitution is owed to Medicare in the amount of
$1,073,264 and to Medicaid in the amount of $223,736. *Id.*

**The Guidelines**

The November 1, 2016 edition of the *United States
Sentencing Commission Guidelines Manual*, incorporating all
Guideline amendments, applies to the offenses charged. U.S.S.G.
§1B1.11. Pursuant to §3D1.2(a) and (d) of the Guidelines, all
counts are grouped together for purposes of calculating the
applicable Guidelines range.

When a conspiracy is expressly covered by another
offense Guideline, that Guideline should be applied. *Id.*
§2X1.1(c)(1). The Guideline for a violation of Health Care
Fraud, 18 U.S.C. § 1347, is found in §2B1.1. Pursuant to that
Section, the base offense level is six. *Id.* §2B1.1(a)(2).
Because the attempted loss caused by the Defendant's criminal
conduct amounted to between $1,500,000 and $3,500,000, a
sixteen-level enhancement is applicable. *Id.* § 2B1.1(b)(1)(I). A
two-level increase is likewise warranted because the offenses of
conviction were federal health care offenses involving a
Government health care program and the loss amount under
subsection (b)(1) was more than $1,000,000. *Id.* §2B1.1(b)(7). An

13

additional three-level enhancement applies because Hasan-Hafez

was a manager or supervisor and the offenses of conviction

involved five or more participants or was otherwise extensive.

*Id.* §3B1.1(b). The Defendant has clearly demonstrated acceptance

of responsibility for the offenses, and a two-level sentence

reduction therefore applies. *Id.* §3E1.1(a). The offense level is

decreased by one additional level because the Defendant has

assisted authorities in the investigation or prosecution of his

own misconduct by timely notifying authorities of the intention

to enter a plea of guilty. §3E1.1(b). Accordingly, the total

offense level is 24.

The Defendant has no criminal history points and a

corresponding Criminal History Category of I. *Id.* §4A1.1(d).

Based upon the calculations set forth above, the

Defendant's Guidelines imprisonment range is 51 to 63 months.

*Id.* As the offenses are Class C felonies, the Guidelines range

for a term of supervised release is one to three years per

count. *Id.* §5D1.2(a)(2). Since the applicable Guideline range is

in Zone D of the Sentencing Table, Hasan-Hafez is ineligible for

probation. *Id.* § 5B1.1, comment n.2. The fine range for these

offenses is from $10,000 to $5,188,000. *Id.* §5E1.2.

14

Costs of prosecution shall be imposed on Defendant as required by statute. *Id.* §5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the Government of any term of probation, or term of imprisonment and term of supervised release imposed. *Id.* §5E1.2(d)(7) and 18 U.S.C. §3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the U.S. Courts, dated August 1, 2018, provides a daily cost of $99, a monthly cost of $3,025, and an annual cost of $36,300 for imprisonment.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in *Booker*, 543 U.S. 220, and the Second Circuit's decision in *Crosby*, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States*, 552 U.S. 85, 102 (2007)

15

(quoting 18 U.S.C. § 3553(a)), having considered the Guidelines
and all of the factors set forth in § 3553(a), and having
reviewed the PSR, the Court will impose a sentence within the
Guidelines range.

**The Sentence**

For the instant offenses, Ashraf Hasan-Hafez shall be
sentenced to 55 months' imprisonment. The term of imprisonment
shall be followed by three years of supervised release on each
count, to run concurrently. 18 U.S.C. § 3624(e). As mandatory
conditions of his supervised release, the Defendant shall:

   (1)   Not commit another federal, state, or local crime.

   (2)   Not unlawfully possess a controlled substance.

   (3)   Refrain from any unlawful use of a controlled
         substance. Defendant must submit to one drug test
         within 15 days of release from imprisonment and at
         least two periodic drug tests thereafter, as
         determined by the Court.

   (4)   Cooperate in the collection of DNA, as directed by the
         probation officer.

The standard conditions of supervision (1-13) apply with
the following special conditions:

   (1)   The Defendant shall be supervised by the district of
         residence.

16

(2)   The Defendant must submit his person, residence, place
      of business, vehicle, and any property or electronic
      devices under his control to a search on the basis
      that the probation officer has reasonable suspicion
      that contraband or evidence of a violation of the
      conditions of the Defendant's probation/supervised
      release may be found. The search must be conducted at
      a reasonable time and in a reasonable manner. Failure
      to submit to a search may be grounds for revocation.
      The Defendant must inform any other residents that the
      premises may be subject to search pursuant to this
      condition.

(3)   Unless in compliance with the installment payment
      schedule, the Defendant must not incur new credit
      charges or open additional lines of credit without the
      approval of the probation officer.

(4)   The Defendant must provide the probation officer with
      access to any requested financial information.


The Court finds that the following agencies have

suffered injuries compensable under the Victim and Witness

Protection Act in the amounts indicated:


| Victim | Amount of Loss |
|--------|----------------|
| Medicare | $1,073,264 |
| Medicaid | $223,736 |
| **Total** | **$1,297,000** |


Forwarding addresses and contacts to whom payments

should be sent has not been furnished by the Government to date.

If necessary, receipt of this information may be deferred for a

maximum of 90 days after sentencing, in accordance with 18

U.S.C. § 3664(d)(5) and (e). It is ordered that the Defendant

make restitution to such agencies totaling $1,297,000, except

that no further payment shall be required after the sum of the

amounts actually paid by all defendants has fully covered all of

the compensable injuries. Any payment made by the Defendant must

be divided among the persons named in proportion to their

compensable injuries.

If the Defendant is engaged in a BOP non-UNICOR work

program, he must pay $25 per quarter toward the criminal

financial penalties. However, if the Defendant participates in

the BOP's UNICOR program as a grade 1 through 4, he must pay 50%

of his monthly UNICOR earnings toward the criminal financial

penalties, consistent with BOP regulations at 28 C.F.R. §545.11.

Any payment made that is not payment in full shall be divided

proportionately among the persons named. The balance of the

restitution must be paid in monthly installments of 20-percent

of gross monthly income over a period of supervision to commence

30 days after the date of the judgment or the release from

custody if imprisonment is imposed. The Defendant must notify

the United States Attorney for this district within 30 days of

any change of mailing or residence address that occurs while any

portion of the restitution remains unpaid.

18

The Defendant must forfeit to the United States his interest in all property that constituted or was derived from any proceeds obtained as a result of the offenses, including but not limited to a total of $1,297,000 in U.S. currency, and for which he is jointly and severally liable.

It is further ordered that the Defendant shall pay to the United States a special assessment of $200, which shall be due immediately.

In light of the significant amount of restitution owed and the forfeiture order that will be imposed in this case, the Court concludes that the Defendant does not have the ability to pay a fine. The fine has therefore been waived in this case.

The Defendant is a good candidate for voluntary surrender. He has kept all court appearances and has been in compliance with all terms and conditions of his pretrial release. He is not viewed as a flight risk or danger to the community.

It is so ordered.

New York, NY
February 7, 2019

ROBERT W. SWEET
U.S.D.J.