UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -v.- | 16 Cr. 221-2 (KPF) |
| ASHRAF HASAN-HAFEZ, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Ashraf Hasan-Hafez,[1] who is currently incarcerated at the satellite prison camp adjacent to the United States Penitentiary Canaan in Waymart, Pennsylvania, has applied for compassionate release, in the form of immediate release to his family home in Brooklyn, pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #248). In brief, Mr. Hasan-Hafez contends that he is at an increased risk of contracting, or of having a greater reaction to infection from, the COVID-19 virus because of pre-existing medical conditions. The Government opposes this motion. (Dkt. #249). As set forth in the remainder of this Order, the Court denies Mr. Hasan-Hafez's motion for compassionate release.

## BACKGROUND

This case, which was initially assigned to the Honorable Robert W. Sweet, has an extensive procedural history that is detailed in multiple prior opinions, all of which are incorporated herein by reference. *See United States v. Hasan-Hafez*, No. 16 Cr. 221 (RWS), 2017 WL 4402577, at *1 (S.D.N.Y.

---

[1] The Clerk of Court is directed to modify the defendant's name in the docket of this case to conform with the caption.

Oct. 3, 2017) (denying motion for reconsideration of prior decision that denied motion to compel production); *United States* v. *Kogan*, 283 F. Supp. 3d 127, 128 (S.D.N.Y. 2017) (denying motions to dismiss and to compel production); *United States* v. *Hasan-Hafez*, No. 16 Cr. 221 (RWS), 2019 WL 494061, at *1 (S.D.N.Y. Feb. 8, 2019) ("*Sentencing Opinion*").

The operative indictment, returned on February 14, 2018, charged Mr. Hasan-Hafez and a co-defendant, Ilya Kogan, in two counts:  Count One charged that from at least January 2010 through August 2013, Mr. Hasan-Hafez and others conspired to commit health care fraud, in violation of 18 U.S.C. § 1347, by executing a scheme to defraud Medicare and Medicaid in connection with the delivery of and payment for health care benefits, items, and services.  Count Two charged that from at least January 2010 through August 2013, Mr. Hasan-Hafez submitted numerous false claims and supporting documentation for physical therapy services and related medical items that were purportedly provided to beneficiaries by qualified persons, but were instead provided by unlicensed, unsupervised or otherwise unqualified persons, or were billed to reflect different or additional services than those that were actually provided.  (Dkt. #162 (the "S2 Indictment")).  The fraud was committed in part through a physical therapy practice, Excellent Care Physical Therapy, for which Mr. Hasan-Hafez was the listed owner.  (Final Presentence Investigation Report ("PSR") ¶ 19).

Trial in the matter was initially scheduled for December 4, 2017 (Minute Entry for July 18, 2017), but was subsequently adjourned until March 19,

2

2018 (Dkt. #166). On March 16, 2018, the Friday before the Monday of trial, Mr. Hasan-Hafez and Mr. Kogan each pleaded guilty to both counts of the S2 Indictment. (Dkt. #191 (plea transcript)). Of note, Mr. Hasaz-Hafez pleaded guilty pursuant to a written plea agreement with the Government, in which the parties stipulated that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 51 to 63 months' imprisonment. (PSR ¶ 5).

After several adjournments, Judge Sweet scheduled sentencing for February 12, 2019. As was his practice, Judge Sweet issued a pre-sentencing opinion, dated February 9, 2019, in order to allow the parties to understand his preliminary views regarding sentencing. *See generally Sentencing Opinion*, 2019 WL 494061. After outlining the offense conduct, the relevant statutes, and the proper Guidelines calculation, Judge Sweet announced his intent to sentence Mr. Hasan-Hafez to concurrent terms of 55 months' imprisonment, in the middle of the applicable Guidelines range. *Id.* at *6. At the sentencing proceeding, defense counsel asked the Court to reconsider the term of imprisonment, noting that Mr. Hasan-Hafez "has a family, varying ages, from grade school up until college, a mother-in-law that lives with him who's disabled, and a wife that's very sick with lupus." (Dkt. #232 at 9). After hearing from the parties, Judge Sweet determined to vary downwardly to impose concurrent terms of 45 months' imprisonment, explaining:

> Every sentence of incarceration causes pain and suffering for those members of the family who are not incarcerated but suffer the consequences of losing father, brother, whatever. And if one could somehow

3

> maintain the sentence that would be suffered solely by the culprit, that would be one thing, and one would wish you could do that. I'm not insensitive to the needs of the family and the consequences for society because of the deprivations that will be imposed upon the family. I'm well aware of that. But that's not the point. Unfortunately, the point is that crimes were committed; society was harmed by those crimes because the money was used for something that society has said it should not be used for. So the entire society was deprived.
>
> I'm going to impose the sentence as set forth in the sentencing opinion, but I will reduce the term by ten months in each case, and that's a consideration based upon the needs of the family. It's not much and it isn't going to change much, but I do want it known that I'm not insensitive to that problem and that society is not insensitive to it....

(*Id.* at 10; *see also* Dkt. #230 (judgment)).

The case was reassigned to the undersigned after Judge Sweet's untimely passing in March 2019. Shortly thereafter, the Court resolved several motions that were filed shortly after sentencing, including motions for a recommendation for placement in a Residential Drug Abuse Program, for the tolling of restitution obligations, and for adjournment of the surrender date. (Dkt. #243). Mr. Hasan-Hafez surrendered to the BOP on April 16, 2019.

On May 15, 2020, Mr. Hasan-Hafez submitted his counseled motion for early release from custody pursuant to the compassionate release provision in 18 U.S.C. § 3582(c)(1)(A)(i), or for early transition to home confinement pursuant to 18 U.S.C. § 3624(c). (Dkt. #248). The Government submitted its opposition on May 22, 2020. (Dkt. #249).

4

## APPLICABLE LAW

The Government is correct that the Court lacks jurisdiction to grant Mr. Hasan-Hafez's request for early transition to home confinement pursuant to 18 U.S.C. § 3624(c)(2). *See generally United States* v. *Bido*, No. 14 Cr. 212 (RJS), 2020 WL 2765689, at *1 (S.D.N.Y. May 28, 2020) ("Notably, the latter two remedies, furlough and home confinement, are exclusively within the discretion of the BOP; the Court lacks authority to order either one."). Accordingly, the Court focuses on Mr. Hasan-Hafez's compassionate release application.

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination, the court must consider the "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." *Id.* § 3582(c)(1)(A). "The defendant has the

burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a given case, without deference to the determination made by the BOP. *See United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020). In addition, the Sentencing Commission counsels that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

## DISCUSSION

Though it is a close question, the Court finds that Mr. Hasan-Hafez's motion is now properly before the Court, and that the requisite 30 days have

passed since the defendant filed his first request for compassionate release on March 26, 2020. (Dkt. #249 at Sealed Exhibit A). The Government is correct that Mr. Hasan-Hafez does not use the term "compassionate release" in his request, nor does he specifically invoke 18 U.S.C. § 3582(c). However, when read in its totality, the submission is obviously (at least to the Court) a compassionate release request. Mr. Hasan-Hafez outlines the medical conditions that, he believes, make the COVID-19 virus "fatal and deadly to" him; he outlines a plan of release; he explains his belief that he will be able to practice social distancing better at home; and he authorizes the review of his medical records to substantiate his medical claims. (*Id.*). Further, any ambiguity regarding Mr. Hasan-Hafez's submission should have been clarified by defense counsel's submission of April 6, 2020, which refers to the prior uncounseled submission as a "petition for compassionate." (*Id.* at Ex. B).

This Court does believe that administrative exhaustion is a pre-condition to filing a compassionate release motion with the Court that cannot be excused, particularly where the Government does not waive its objection to this requirement. *See generally United States* v. *Gentille*, No. 19 Cr. 590 (KPF), 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020). However, on these unusual facts, the Court finds that this requirement has been satisfied, and that 30 days have passed since both Mr. Hasan-Hafez's request and his counsel's clarification of that request. The Court thus proceeds to consider whether Mr. Hasan-Hafez has identified "extraordinary and compelling reasons" warranting his release. It concludes that he has not.

As noted, Mr. Hasan-Hafez argues that the conditions of his incarceration at the prison camp at USP Canaan place him at a higher risk of contracting COVID-19 (or of having a more severe reaction if infected), because of the nature of his confinement at the facility, his existing medical conditions, and the potential inability of prison staff to handle the outbreak.  The Court recognizes, as do the parties, that sister courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons.  *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020); *see also United States* v. *Kerrigan*, No. 16 Cr. 576 (JFK), 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) (collecting cases).  This Court aligns itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease."  *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant.  In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the

8

defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

Mr. Hasan-Hafez has not demonstrated the existence of extraordinary and compelling circumstances in his case. Mr. Hasan-Hafez is 49 years old, which would place him at a slightly elevated risk of hospitalization or death from COVID-19. *See* Weekly Updates by Select Demographic and Geographic Characteristics, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex (accessed May 31, 2020). Mr. Hasan-Hafez adds, however, that he has various co-morbidities that the CDC has recognized as presenting an increased risk, including sleep apnea, diabetes, hypertension, and high cholesterol. (Dkt. #248).

The Court has reviewed with care Mr. Hasan-Hafez's BOP medical records, which substantiate each of the conditions he cites, but which also make clear that Mr. Hasan-Hafez has worked successfully with BOP medical professionals to manage those conditions, even in recent months.[2]  *Cf.* CENTERS FOR

---

[2] On this point, the Government correctly notes that "[t]he records suggest that Hasan-Hafez is having some difficulty managing his diabetes, hypertension, and high cholesterol but that he has been recommended to lose weight and adjust his diet — treatments that are available to him while incarcerated." (Dkt. #249 at 7).

9

DISEASE CONTROL AND PREVENTION, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed May 31, 2020) ("People of all ages with underlying medical conditions, *particularly if not well controlled*...." (emphasis added)).  There is nothing to suggest that Mr. Hasan-Hafez has been unable to care for himself or has been neglected by Canaan medical personnel. Instead, Mr. Hasan-Hafez appears to have received appropriate medical care while incarcerated.  *See, e.g.*, *Brady*, 2020 WL 2512100, at *3-4 (acknowledging serious nature of defendant's medical conditions but denying compassionate release where conditions stable and managed in BOP facility); *United States* v. *Garcia*, No. 18 Cr. 802 (CM), 2020 WL 2468091, at *5-6 (S.D.N.Y. May 13, 2020) (denying compassionate release to defendant with asthma, hypertension, and heart conditions housed in facility with 40 documented cases of virus).

Federal courts, including this Court, have been appropriately concerned about the conditions of confinement at federal facilities.  *See, e.g.*, *United States* v. *Park*, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020). To that end, this Court has scrutinized the BOP's Pandemic Influenza Plan, *see* https://www.bop.gov/coronavirus/ (last accessed May 31, 2020), as well as the BOP's listing of confirmed cases among inmates and staff at each facility. As of the date of this Order, the BOP has identified no current cases of COVID-19 among staff or inmates at USP Canaan; as the Government notes, one inmate and four staff members have recovered from the virus, but only the

inmate had any contact with the camp, and he was removed immediately upon testing positive. (Dkt. #249 at 8).

For his part, Mr. Hasan-Hafez proposes to live with his wife and five children in Brooklyn, New York. But as sister courts in this District have observed, "New York City has widely been considered the COVID-19 epicenter for the United States and the world. … These statistics support the inference that [the defendant] would be more at risk of contracting COVID-19 were he released and required to stay in his apartment … than he would be by remaining in the Jail." *United States* v. *Sanchez*, No. 18 Cr. 833 (VSB), 2020 WL 2787654 (S.D.N.Y. May 29, 2020); *see also United States* v. *Fernandez*, No. 12 Cr. 445-1 (JMF), 2020 WL 2731236, at *7 (S.D.N.Y. May 26, 2020) ("The New York Metropolitan area has been labeled the new 'epicenter' of the pandemic worldwide."). On balance, this Court concludes that the danger that Mr. Hasan-Hafez faces from infection with COVID-19, even accounting for his medical conditions, does not amount to an extraordinary and compelling reason for granting compassionate release. *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Hasan-Hafez's motion. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). As the Presentence Investigation Report makes clear, Mr. Hasan-Hafez participated in a multi-year health care fraud conspiracy, in the course of which Medicare and Medicaid suffered actual losses of $1,297,000. (PSR ¶¶ 19-43). And as the Government notes,

> at the direction of Hasan-Hafez and Kogan, employees of Excellent Care treated patients without proper licenses or qualifications to do so, and completed fraudulent progress notes and bills that were submitted to Medicare and Medicaid. Patients received acupuncture at Excellent Care or received physical therapy or massage from individuals who were not licensed to provide such services.

(Dkt. #249 at 2). Of particular concern to this Court is the pressure that Mr. Hasan-Hafez placed on his employees — who depended on him for their continued employment *and* immigration status — to engage in such obviously fraudulent conduct. (*Id.*). It would undercut the § 3553(a) factors for the Court to allow Mr. Hasan-Hafez to serve just 13 months of a 45-month sentence. Accordingly, even if the Court had found extraordinary and compelling circumstances on the facts presented, which it has not, it would deny Mr.

Hasan-Hafez's application based on its contemporaneous consideration of the § 3553(a) factors.[3]

## CONCLUSION

For the foregoing reasons, Defendant Ashraf Hasan-Hafez's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 248.

SO ORDERED.

Dated:  June 1, 2020
        New York, New York

                                    KATHERINE POLK FAILLA
                                    United States District Judge

---

[3]     As noted, Mr. Hasan-Hafez can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant any such relief, however, is reserved to the discretion of the BOP.